UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA JOHNSON on behalf of her minor children, J.B. And J.D.<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN WILLIAMS individually and in his official capacity as a Police Officer for the CITY OF POUGHKEEPSIE POLICE DEPARTMENT, KEVIN D. VANWAGNER SHIELD #44 individually and in his official capacity as a Police Officer for the CITY OF POUGHKEEPSIE POLICE DEPARTMENT<br><br>Defendants.<br><br>and<br><br>CITY OF POUGHKEEPSIE<br><br>Nominal Defendant. | Civil Action No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

By and through their attorney William O. Wagstaff III, plaintiffs allege upon knowledge, information and/or belief as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the plaintiffs J.B. and J.D. are seeking relief for the violation by defendants of their rights, privileges, and immunities secured by the Fourth Amendment to the United States Constitution, New York State Constitution, and laws promulgated by the New York Legislature. This suit is being initiated under 42 U.S.C § 1983, which is the federal mechanism that allows constitutional tortfeasors acting under color of law to be sued in Federal Court.

1

2.  The disproportionate treatment of men, women, and children of color, at the hands of police, raises questions about how America values their lives. This harsh reality tends to overwhelm, degrade and leave people of color to question the worth of their flesh and souls.

3.  Police Officers take an oath to protect and serve us all, but when their failure to honor that oath harms children it is particularly alarming.

4.  On March 11, 2019, J.B. and J.D. were falsely arrested and brutalized by City of Poughkeepsie Police Officers. Video of the encounter went viral, creating Ferguson-like tensions between the community and the police. Over the days following these unlawful arrests, detectives embarked on a campaign of intimidation under the guise of an investigation into the March 11th events.

5.  Detectives threatened teenage witnesses with jail time if they refused to give statements or cooperate in ways supportive of the arresting officers' narrative. Even worse, they held one witness in custody for close to five (5) hours while police personnel deleted video evidence off her cellphone. In addition, they forced the teenage witness to provide her login credentials to her cloud account and deleted evidence from the cloud. Contained among the deleted videos were several that captured the events of March 11th.

6.  City of Poughkeepsie Mayor Robert Rolison - a retired police officer himself - was made aware of the witness intimidation and destruction of evidence. Despite learning of this, Mayor Rolinson and his administration remained arrogantly defiant to calls from this family and the community for justice. Meetings with Mayor Rolinson seeking an agreement to improve police training and discipline officers, with an eye towards easing the communal tension, were unsuccessful necessitating this action.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff alleges violations of the United States Constitution, 28 U.S.C. § 1343 because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law.

8. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

**PARTIES**

**Plaintiffs**

9. **J.B.** is an African American female sixteen-year-old, who resides with her sister J.D. and mother Melissa Johnson within this judicial district. At the time of the events complained of herein she was fifteen years old.

10. **J.D.** is an African American female thirteen-year-old, who resides with her sister J.B. and mother Melissa Johnson within this judicial district. At the time of the events complained of herein she was twelve years old.

**Defendants**

11. **Officer John Williams**, at all times relevant to the facts of the Complaint, was employed by the City of Poughkeepsie and acting under color of law. Officer Williams' actions were malicious and intentional; accordingly, he is also being sued individually.

12. **Officer Kevin D. VanWagner Shield #44**, at all times relevant to the facts of the Complaint, was employed by the City of Poughkeepsie and acting under

color of law. Officer VanWagner's actions were malicious and intentional; accordingly, he is also being sued individually.

### Nominal Defendant

13.     **The City of Poughkeepsie** is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City has established and maintained a police department. The City is responsible for the illegal actions of its police department, police officials, the rank and file as well as units it creates unilaterally or through inter-municipal agreement.

### STATEMENT OF FACTS

14.     On March 11, 2019, plaintiffs were with a group of children after school in the vicinity of the intersection of Church Street and Hammersley Ave in the City of Poughkeepsie.

15.     The children were spectators to a fight that spilled over from an earlier confrontation. While spectators, neither plaintiff was a participant in either dispute.

16.     Defendants were among the battalion of officers dispatched to the scene. Instead of speaking to the group of teenagers with the respect they would want shown to their own children, defendants immediately barked profanity laced commands at the children present, despite the fact that the fight already ended.

17.     In response to defendants' diatribe children present exercised their right to express themselves and cursed back, which violated no laws.

18.     Apparently unable to identify who specifically cursed, but nevertheless ego bruised and upset, Defendant Officer VanWagner grabbed J.D. and proceeded to effectuate an unlawful arrest. J.D. committed no crime, but apparently committed the

cardinal sin of not accepting, with no response, the illegal actions of the officer and questioning why she was being arrested.

19. Instinctively knowing J.D. did nothing illegal multiple bystanders tried to intervene and stop her arrest. Interestingly, despite being pushed and shoved by other teenagers who were attempting to stop J.D.'s unlawful arrest, defendants did not arrest any of the other children. To no avail, J.D. pleaded with the defendants that she did nothing wrong and should not be arrested.

20. Defendant VanWagner grabbed J.D. suspending her in air until he dropped her twelve-year-old body on the cold concrete landing on top of her with the force of his entire body.

21. Witnessing her younger sister be manhandled and arrested J.B. screamed out. Before she could get close to her sister J.D., J.B. was slammed by her arm -- with enough force to dislocate her shoulder – hitting her head on the cold concrete where she lost consciousness.

22. The crowd of children tried to prevent J.B.'s unlawful arrest as well, to no avail. When she regained consciousness, J.B. realized she was arrested and that both her and J.D. were being taken to the Poughkeepsie Police Department.

23. Once at the Poughkeepsie Police Department plaintiffs were held against their will and separated with no parent/guardian or lawyer present.

24. It gets worse, J.B. was on her period and as a result of the way she was flung around like a rag doll by Defendant Williams her clothing moved, and she was leaking menstrual blood. J.B. was denied sanitary napkins and when she couldn't use her cuffed hands to fix herself, she just fell to the floor embarrassed that if she remained standing her blood soiled pants would be on display.

5

25. After hours in custody both plaintiffs were released to their mother Melissa Johnson and given desk appearance tickets charging them both with Obstruction of Governmental Administration and J.D. was additionally charged with Resisting Arrest

26. In the days following plaintiffs' arrest a seventeen (17) second video of defendant Williams using excessive force on J.B. surfaced and went viral creating Ferguson-like tension between the community and the Poughkeepsie Police.

27. Detective Cowles and other members of the Poughkeepsie Police Department started calling children that witnessed the events of March 11th and their parents. The tone of these calls was authoritarian and intended to intimidate the children into providing statements that would corroborate the narratives of the arresting officers, despite their falsehoods. Unfortunately, multiple witnesses were under some form of probation or supervision from the Rockland County Department of Probation. Acutely aware of how vulnerable these children were members of the Poughkeepsie Police preyed on their vulnerability to cover up the malfeasance of their comrades.

28. On or about March 16, 2019, William Murphy presented his daughter Laprincea Murphy to the Poughkeepsie Police Department (PPD) for questioning and she was threatened with prosecution for her alleged involvement in a March 9, 2019 incident if she didn't cooperate. Reasonably afraid she complied with demands to produce her cellphone so it could be searched for evidence of what happened on March 11th involving plaintiffs. *See Exhibit 1* Affidavit of William Murphy

29. On or about March 20, 2019, William Murphy presented Iseeasia Villani his other daughter[1] to PPD for questioning and she was threatened with being sent to Rockland County Jail if she too didn't provide her cellphone and sign a statement typed

---

[1] Mr. Murphy and Iseeasia's mother were previously in a relationship that ended years ago; however, she still lives with him and he has been a surrogate father while not her biological father.

by Det Cowles. Iseeasia was held in custody for close to five (5) hours while police personnel deleted video evidence off her cellphone. In addition, they forced her to provide her login credentials to her cloud account and deleted evidence from the cloud. Contained among the deleted videos were several that captured the events of March 11th. *See Exhibit2* Affidavit of Iseeasia Villani

30. On March 4, 2020, an Order of Adjournment in Contemplation of Dismissal was issued by Dutchess County Family Court Judge Tracy C. MacKenzie in favor of J.B.

31. On July 30, 2020, an Order of Adjournment in Contemplation of Dismissal was issued by Dutchess County Family Court Judge Tracy C. MacKenzie in favor of J.D.

32. As a direct and proximate result of defendants' acts, plaintiffs suffered violations of their civil rights, including loss of physical liberty, degradation, humiliation, loss of reputation and severe emotional distress which will be carried with them for life.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**False Arrest in violation of the Fourth Amendment**

31. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

32. Defendants, at the time of the conduct, complained of herein, were both employees of the nominal defendant City of Poughkeepsie and acted under color of law.

33. The defendants individually and as co-conspirators subjected plaintiffs J.B. and J.D. to false arrest without probable cause, reasonable suspicion, or legal justification, and of which plaintiffs were aware and did not consent. As a direct and

proximate result of the acts of the defendants individually and as co-conspirators, the plaintiff has been deprived of his rights under the Fourth Amendment to the United States Constitution and are entitled to compensatory damages, punitive damages, and attorney's fees for their injuries.

### SECOND CAUSE OF ACTION

**Excessive Force in violation of the Fourth Amendment**

34. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

35. Defendants, at the time of the conduct, complained of herein, were both employees of the defendant City of Poughkeepsie and acted under color of law.

36. Defendants individually and as co-conspirators used excessive force against plaintiffs J.B. and J.B.. As a direct and proximate result of the acts of the defendants individually and as co-conspirators, the plaintiffs have been deprived of their rights under the Fourth Amendment to the United States Constitution and are entitled to compensatory damages, punitive damages, and attorney's fees for his injuries.

### PUNITIVE DAMAGES

37. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

38. The acts of the individual defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm plaintiffs without regard for their rights secured as an American citizens and were based on a lack of concern and ill-will towards the plaintiffs because they placed their egos and emotions above the recognition of the plaintiffs' rights. Such acts, therefore, warrant an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and relief against Defendants as follows:

a. Award Compensatory Damages in an amount to be determined at trial;

b. Award Punitive Damages in an amount to be determined at trial;

c. Award costs and expenses of this action including attorneys' fees to Plaintiffs pursuant to 43 U.S.C. § 1988;

d. Any such other and further relief as this Court may deem appropriate.

**A JURY TRIAL IS DEMANDED**

DATED: White Plains, New York
October 16, 2020

        **LAW OFFICE OF WILLIAM O. WAGSTAFF III P.C.**

By: _____
William O. Wagstaff III, Esq.
William@Wagstaff.Legal
75 South Broadway Suite 400
White Plains, New York 10601
Tel: 914-226-3300
Fax: 914-226-3301

*Counsel for Plaintiffs*